UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

| | |
|---|---|
| AQUENDIUS WALKER | CIVIL ACTION |
| VERSUS | NO. 20-02661 |
| DARREL VANNOY, WARDEN | SECTION "D" (2) |

**REPORT AND RECOMMENDATION**

This matter was referred to a United States Magistrate Judge to conduct hearings, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to 28 U.S.C. §§ 636(b)(1)(B) and (C) and, as applicable, Rule 8(b) of the Rules Governing Section 2254 Cases. Upon review of the entire record, I have determined that a federal evidentiary hearing is unnecessary.[1] For the following reasons, I recommend that the petition for habeas corpus relief be **DISMISSED WITH PREJUDICE** as time-barred.

## I. FACTUAL BACKGROUND

Petitioner Aquendius Walker is a convicted inmate incarcerated in the Louisiana State Penitentiary in Angola, Louisiana.[2] ECF No. 1, at 1. On April 2, 2013, Walker and co-defendant Derrick James were indicted by a Terrebonne Parish grand jury for first degree murder.[3] Walker pled not guilty to the charge on April 12, 2013.[4]

[1] A district court may hold an evidentiary hearing only when the petitioner shows either the claim relies on a new, retroactive rule of constitutional law that was previously unavailable (28 U.S.C. § 2254(e)(2)(A)(i)) or the claim relies on a factual basis that could not have been previously discovered by exercise of due diligence (*id*. § 2254(e)(2)(A)(ii)) *and* the facts underlying the claim show by clear and convincing evidence that, but for the constitutional error, no reasonable jury would have convicted the petitioner. *Id*. § 2254(e)(2)(B).

[2] ECF No. 1, at 1.

[3] State Record (hereinafter "St. R.") Vol. 3 of 7, Indictment, 4/2/13; St. R. Vol. 6 of 7, Grand Jury Return, 4/2/13.

[4] St. R. Vol. 6 of 7, Min. Entry, 4/12/13.

The Louisiana First Circuit Court of Appeal summarized the facts established at trial as follows:

> During the late evening hours of January 24, 2013, or the early morning hours of January 25, 2013, Freddie Goodwin met up with a friend of his, Bernard "B.J." Baker, Jr. (the victim), in the area of Johnson Ridge Lane in Terrebonne Parish. Goodwin asked Baker to give him some money because it was his birthday. Baker told Goodwin that he did not currently have any money, but would give him some a little later.
>
> Shortly before 1:30 a.m. (based on the timing of eventual 911 calls), Goodwin called Baker and told him that he was coming to "holler" at him. Goodwin saw Baker in the area of 156 Johnson Ridge Lane, talking or "fussing" with Derrick James, a mutual cousin of both Goodwin and Baker. Goodwin explained at trial that Baker said James and some people from Marydale, a nearby neighborhood, were "playing" with him because they had taken his phone. Goodwin testified that James said he had taken Baker's phone because Baker had never paid him for a gun. Despite the somewhat contentious issue, Goodwin stated that James simply appeared to be "clowning" Baker in an attempt to get on his nerves. Baker stated that he knew where James brought his phone, and he turned to walk to James's home, which was nearby. James told Baker that he might not want to do that, or else he would "sic" his "little goons" on him.
>
> When James mentioned his "little goons," an individual who Goodwin identified at trial as defendant pulled out a handgun. Still, Baker and James laughed at the situation, and defendant briefly held his weapon down near his side. Baker walked back toward James and defendant, and he told James that he was going to "power up" and wanted his phone when he returned. At that time, defendant drew his gun again and told Baker that he can go power up, but he can get "powered down, too." Though James and Baker continued to laugh, defendant became serious and told Baker that he wanted his money. Defendant then began to count down from "five," and another, unidentified individual told Baker that defendant was not playing with him. When defendant got to "one," he shot Baker in the leg. Goodwin ran from the scene as Baker fell to the ground. As he ran, Goodwin heard Baker yelling, "Take it," followed by what he estimated to be four or five more gunshots. He then saw defendant get into a white car and drive away. Though Goodwin was not familiar with defendant at the time of the shooting, he later learned defendant's name after describing him to another individual. He testified unequivocally that defendant was the person who shot Baker.
>
> After being shot, Baker staggered to a nearby trailer belonging to Allen Harold. Baker entered the door of Harold's trailer before collapsing to the floor. Harold and his girlfriend, Deshira Williams, both called 911, and Williams attempted to render aid to Baker.
>
> Officer Seth Boudreaux, of the Terrebonne Parish Sheriff's Office, was the first person to respond to the scene. He walked into Harold's trailer and saw the

victim lying on the ground with several apparent gunshot wounds. As Baker drifted in and out of consciousness, Officer Boudreaux asked him who shot him. Baker responded, "Quen and Derrick James." When asked who actually shot him, Baker repeated only, "Quen." When paramedics arrived, Officer Boudreaux ceased his questioning of the victim.

Captain Dawn Foret, assistant chief of detectives with the Terrebonne Parish Sheriff's Office, also responded to the scene of the shooting. After meeting with the other responding detectives and giving them their assignments, Captain Foret relocated to Thibodaux Regional Medical Center to see if she could interview the victim. Captain Foret was allowed into the trauma room as medical personnel cared for the victim. During a brief conversation, Baker told her that "Derrick and Quenton" shot him. When pressed for more specifics, Baker said that "Derrick" was Derrick James, his cousin. He identified "Quen" or "Quenton" as a young black male, approximately 16 or 17 years old, from Marydale. Later in the conversation, Baker clarified that Derrick James had stolen his phone, and Quen shot him. Captain Foret was unable to record this conversation because of a nurse's instruction that no electronics were allowed in the trauma room.

After this initial conversation, Captain Foret left the trauma room to inform the other detectives regarding Derrick James and to look through the property that medical personnel had removed from Baker. In her search of Baker's clothing, Captain Foret found a cell phone. She believed this discovery to be significant because of Baker's statement that James had stolen his cell phone. Captain Foret reentered the trauma room and again spoke with Baker. He again repeated that Derrick James had robbed him and that Quen shot him. When Captain Foret showed Baker the cell phone she had recovered, Baker explained that he had two cell phones, and James had stolen the other one. Captain Foret finished this second conversation by asking Baker to verify the number for each phone.

Following their conversation with Captain Foret, the detectives remaining at the scene arrested Derrick James, whom they located in his girlfriend's trailer in the same neighborhood. The detectives were eventually able to determine that "Quen" was Aquendius Walker, defendant. He was arrested on January 29, 2013, with the assistance of the U.S. Marshals. At the time of his arrest, defendant made a brief statement to Terrebonne Parish Sheriff's Detective Donald Bourg that he was "ready to take his lick for what had happened." Defendant did not testify at trial.

Baker died from his injuries on January 26, 2013. An autopsy revealed that the victim had been shot four times - once in the hand, once in the abdomen/back, and once in each leg. Wounds to Baker's abdomen/back and left leg were the main contributors to his death.[5]

---

[5] *State v. Walker*, No. 2015-KA-0945, 2015 WL 9466990, at *1-3 (La. App. 1st Cir. Dec. 23, 2015) (footnote omitted); St. R. Vol. 7 of 7, 1st Cir. Opinion, 2015-KA-0945, at 2-5, 12/23/15 (footnote omitted).

The defendants' cases were severed, and James eventually pled guilty to an amended charge of simple robbery.[6] Walker went to trial before a jury on May 19, 21, and 22, 2014.[7] The jury found him guilty as charged.[8] At a September 10, 2014 hearing, the state trial court denied Walker's motions for new trial and post-verdict judgment of acquittal.[9] In the same hearing, Walker waived statutory sentencing delays, and was sentenced to serve life in prison at hard labor *with*[10] benefit of parole.[11] The court also denied Walker's motion to reconsider the sentence.[12]

On direct appeal to the Louisiana First Circuit, Walker's appointed counsel asserted two claims:

(1) the state trial court denied Walker the right to present a defense when it refused to allow defense counsel to comment in closing arguments that the State did not present witnesses to corroborate the detectives' claims that the victim identified Walker; and

(2) the state trial court erred when it failed to order a remedy or grant a mistrial based on the State's failure to provide the defense with the Louisiana State Police Crime Lab report on DNA testing until the morning of trial.[13]

On August 10, 2015, the Louisiana First Circuit granted Walker leave to file a *pro se* supplemental brief on or before September 9, 2015, but Walker did not file a brief.[14] On December 23, 2015, the Louisiana First Circuit affirmed Walker's conviction finding the claims meritless.[15]

---

[6] St. R. Vol. 6 of 7, Plea Min. Entry (James), 9/9/14; *id*., Min. Entry, 2/4/14 (severance orally granted); St. R. Vol. 3 of 7, Motion to Sever Defendants, 8/6/13; St. R. Vol. 7 of 7, Plea Transcript (James), 9/9/14.
[7] St. R. Vol. 6 of 7, Trial Mins., 5/19/14; *id*., Trial Mins., 5/21/14; *id*., Trial Mins., 5/22/14.
[8] *Id*., Trial Mins., 5/22/14; *id*., Verdict Form, 5/22/14.
[9] *Id*., Sentencing Tr., at 4-5, 9/10/14; *id*., Sentencing Mins., 9/10/14; *id*., Motion for New Trial, 9/10/14; *id*., Motion for Judgment of Acquittal, 9/10/14.
[10] Because Walker was 17 years old when the crime was committed, the court found parole eligibility was appropriate. *Id*., Sentencing Tr., at 9-12, 9/10/14.
[11] *Id*., Sentencing Tr., at 13, 9/10/14; *id*., Sentencing Mins., 9/10/14.
[12] *Id*., Sentencing Tr., at 15, 9/10/14; *id*., Motion to Reconsider Sentence, 9/10/14.
[13] St. R. Vol. 7 of 7, Appeal Brief, 2015-KA-0945, at 4, 8/3/15.
[14] *Id*., Motion to File Supplemental Brief, 8/4/15; *id*., 1st Cir. Order, 2015-KA-0945, 8/10/15.
[15] *Walker*, 2015 WL 9466990, at *1; St. R. Vol. 7 of 7, 1st Cir. Opinion, 2015-KA-0945, 12/23/15.

The Louisiana Supreme Court denied Walker's related writ application without stated reasons on February 24, 2017.[16] Walker did not file an application for writ of certiorari with the United States Supreme Court within 90 days, and thus, his conviction and sentence became final on May 25, 2017.[17]

More than one year later, on May 29, 2018, Walker filed with the state trial court an application for post-conviction relief asserting three claims:

(1) he received ineffective assistance when counsel failed to subpoena or interview emergency medical and hospital personnel to challenge the State witnesses' testimony about the victim's dying declarations;

(2) the statute creating the offense charged and sentence (LA. REV. STAT. ANN. § 14:30(C)(2)) is unconstitutional in allowing non-unanimous verdicts;

(3) his was denied effective assistance of counsel on appeal when counsel briefed two frivolous claims instead of the first two claims raised in this application;

(4) he received ineffective assistance when counsel failed to object to the State instituting prosecution of the first degree murder charge without the death penalty.[18]

On August 8, 2018, the state trial court denied the application.[19] The court found the first claim meritless under *Strickland v. Washington*, 466 U.S. 668 (1984), the second claim waived for lack of a contemporaneous objection at trial under LA. CODE CRIM. PROC. art. 841, the third and

[16] *State v. Walker*, 216 So. 3d 57 (La. 2/24/17); St. R. Vol. 7 of 7, La. Sup. Ct. Order, 2016-KO-0153, 2/24/17.
[17] *Ott v. Johnson*, 192 F.3d 510, 513 (5th Cir. 1999) (period for filing for certiorari with the Supreme Court is considered in the finality determination under 28 U.S.C. § 2244(d)(1)(A)); SUP. CT. R. 13(1).
[18] St. R. Vol. 7 of 7, Application for Post-Conviction Relief, at 5, 6/4/18 (dated 5/29/18); *id*., Memorandum in Support, at 3 & 13, 6/4/18 (dated 5/29/18).
[19] *Id*., Reasons for Judgment, 8/8/18 (dated 8/1/18); *id*., Trial Court Order, 8/8/18 (dated 8/1/18).

fourth claims meritless for the reasons previously stated and, the fourth claim was also not preserved for appeal.[20]

On December 10, 2018, the Louisiana First Circuit denied Walker's writ application finding he did not meet his burden of proof under LA. CODE CRIM. PROC. art. 930.2.[21] The Louisiana Supreme Court denied Walker's subsequent writ application on July 17, 2020, because he failed to show that he received ineffective assistance of counsel under *Strickland* and, as to the other claims, failed to meet his burden of proof under LA. CODE CRIM. PROC. art. 930.2.[22]

## II. **FEDERAL HABEAS PETITION**

On September 29, 2020,[23] Walker filed a petition for federal habeas corpus relief which asserts the following claims:

(1) the state trial court violated his right to present a defense;

(2) the state trial court refused to grant a mistrial or find a discovery violation by the State;

(3) petitioner received ineffective assistance when trial counsel failed to subpoena emergency medical and hospital personnel who were present when the victim made his dying declarations to police;

(4) La. Rev. Stat. § 14:30(C)(2) is unconstitutional; and

[20] *Id*, Reasons for Judgment, 8/8/18 (dated 8/1/18).
[21] *State v. Walker*, No. 2018-KW-1255, 2018 WL 6523101, at *1 (La. App. 1st Cir. Dec. 10, 2018); St. R. Vol. 7 of 7, 1st Cir. Order, 2018-KW-1255, 12/10/18; St. R. Vol. 1 of 7, 1st Cir. Writ Application, 2018-KW-1255, 9/5/18 (dated 8/29/18).
[22] *State v. Walker*, 298 So. 3d 155 (La. 7/17/20); St. R. Vol. 2 of 7, La. Sup. Ct. Order, 2019-KH-00101, 7/17/20; *id*., La. Sup. Ct. Writ Application, 19-KH-101, 1/16/19 (e-filed 1/4/19); St. R. Vol. 7 of 7, La. Sup. Ct. Letter, 2019-KH-101, 1/16/19.
[23] The record reflects that Walker's petition was emailed by the legal department at the Louisiana State Penitentiary to the clerk of court for the United States District Court for the Middle District of Louisiana on September 29, 2020. ECF No. 1-2, at 107. The clerk of Middle District forwarded the pleadings to the clerk of this court, and the pleadings were filed upon receipt. *Id*.

(5) petitioner received ineffective assistance when appellate counsel failed to brief the first two claims asserted in this petition.[24]

The State filed a response in opposition to Walker's petition asserting that the petition was not timely filed.[25] Walker did not file a reply to the State's opposition.

## III. LAW AND ANALYSIS

The Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214, comprehensively revised federal habeas corpus legislation, including 28 U.S.C. § 2254. The AEDPA went into effect on April 24, 1996,[26] and applies to habeas petitions filed after that date.[27] McGhee's petition is deemed filed on September 28, 2020.[28]

### A. Preliminary Considerations

The two threshold questions in habeas review under the amended statute are (1) whether the petition is timely and (2) whether petitioner's claims were adjudicated on the merits in state court. In other words, has the petitioner exhausted state court remedies and is the petitioner in "procedural default" on a claim.[29] The State does not address exhaustion or procedural default in

[24] ECF No. 1, at 4-5, 8-9.
[25] ECF No. 10.
[26] The AEDPA was signed into law on that date and did not specify an effective date for its non-capital habeas corpus amendments. Absent legislative intent to the contrary, statutes become effective at the moment they are signed into law. *United States v. Sherrod*, 964 F.2d 1501, 1505 (5th Cir. 1992).
[27] *Flanagan v. Johnson*, 154 F.3d 196, 198 (5th Cir. 1998) (citing *Lindh v. Murphy*, 521 U.S. 320 (1997)).
[28] The Fifth Circuit has recognized that a "mailbox rule" applies to pleadings, including habeas corpus petitions filed after the effective date of the AEDPA, submitted to federal courts by prisoners acting *pro se*. Under this rule, the date when prison officials receive the pleading from the inmate for delivery to the court is considered the time of filing for limitations purposes. *Coleman v. Johnson*, 184 F.3d 398, 401 (5th Cir. 1999); *Spotville v. Cain*, 149 F.3d 374, 378 (5th Cir. 1998); *Cooper v. Brookshire*, 70 F.3d 377, 379 (5th Cir. 1995). The prison legal department's official stamps indicate that the petition and attached pleadings were received from Walker on September 28, 2020. ECF No. 2, at 1.
[29] *Nobles v. Johnson*, 127 F.3d 409, 419-20 (5th Cir. 1997) (citing 28 U.S.C. § 2254(b), (c)).

its response. Instead, the State asserts that Walker's federal habeas petition was not timely filed because it was not filed within one year after finality of his conviction.[30]

For the reasons that follow, the State's limitations defense is supported by the record. Walker's petition was not timely filed under the AEDPA, and therefore, it should be dismissed with prejudice as time-barred.

**B. <u>AEDPA Statute of Limitations</u>**

The AEDPA requires that a § 2254 petition must ordinarily be filed within one year of the date the conviction became final.[31] Walker's conviction was final on May 25, 2017, when the time for filing for a writ of certiorari in the United States Supreme Court expired 90 days after the February 24, 2017 decision by the Louisiana Supreme Court on his state court direct appeal. Applying § 2244 literally, Walker had one year from finality of his conviction, or until May 25, 2018, to file his federal habeas corpus petition. Walker did not file his federal habeas corpus

---

[30] ECF No. 10, at 4-6.

[31] *Duncan v. Walker*, 533 U.S. 167, 179-80 (2001). The statute of limitations provision of the AEDPA in 28 U.S.C. § 2244(d) provides for other triggers that do not apply here:

> (1) A 1-year period of limitation shall apply to an application for a writ of habeas corpus by a person in custody pursuant to the judgment of a State court. The limitation period shall run from the latest of--
>
> A. the date on which the judgment became final by the conclusion of direct review or the expiration of the time for seeking such review;
>
> B. the date on which the impediment to filing an application created by State action in violation of the Constitution or laws of the United States is removed, if the applicant was prevented from filing by such State actions;
>
> C. the date on which the constitutional right asserted was initially recognized by the Supreme Court, if the right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review; or
>
> D. the date on which the factual predicate of the claim or claims presented could have been discovered through the exercise of due diligence.
>
> (2) The time during which a properly filed application for State post-conviction or other collateral review with respect to the pertinent judgment or claim is pending shall not be counted toward any period of limitation under this subsection.

petition within this one-year period. Accordingly, his petition must be dismissed as untimely, unless the one-year statute of limitations was interrupted or otherwise tolled under one of the following two ways recognized in the applicable law.

**1. Statutory Tolling**

The AEDPA provides for suspension of its one-year limitations period: "The time during which a *properly filed application for State post-conviction or other collateral review* with respect to the pertinent judgment or claim is pending *shall not be counted* toward any period of limitation under this subsection."[32] The Supreme Court has described this provision as a tolling statute.[33]

By its plain language, this provision does not create a new, full, one-year term within which a federal habeas petition may be filed at the conclusion of state court post-conviction proceedings.[34] Rather, as the United States Fifth Circuit and other federal courts have held, because this statute is a tolling provision, the time during which state court post-conviction proceedings are pending must merely be subtracted from the one-year limitations period:

> [Section] 2244(d)(2) provides that the period during which a properly filed state habeas application is pending must be excluded when calculating the one[-]year period. Under the plain language of the statute, any time that passed between the time that [petitioner's] conviction became final and the time that his state application for habeas corpus was properly filed must be counted against the one[-]year period of limitation.[35]

For a post-conviction application to be considered "properly filed" within the meaning of § 2244(d)(2), the applicant must "'conform with a state's applicable procedural filing

---

[32] 28 U.S.C. § 2244(d)(2) (emphasis added).
[33] *Duncan*, 533 U.S. at 175-78.
[34] *Flanagan*, 154 F.3d at 199 n.1.
[35] *Id.*; *Brisbane v. Beshears*, 161 F.3d 1, 1998 WL 609926, at *1 (4th Cir. Aug. 27, 1998) (unpub.); *Gray v. Waters*, 26 F. Supp. 2d 771, 771-72 (D. Md. 1998).

requirements,'" such as timeliness and location of filing.[36] The timeliness consideration in Louisiana, for purposes of the AEDPA, requires application of a prison mailbox rule to state pleadings filed *pro se* by a prisoner.[37] I have applied that rule where necessary to petitioner's state court pleadings delineated in the procedural history.

A matter is "pending" for § 2244(d)(2) purposes "as long as the ordinary state collateral review process is 'in continuance.'"[38] The phrase "other collateral review" in the statute refers to state court proceedings challenging the pertinent judgment subsequently challenged in the federal habeas petition.[39] A "pertinent judgment or claim" requires that the state court filings for which tolling is sought must have challenged the same conviction being challenged in the federal habeas corpus petition and must have addressed the same substantive claims being raised in the federal habeas corpus petition.[40]

As calculated above, Walker's conviction was final under federal law on May 25, 2017, which was 90 days after the Louisiana Supreme Court denied his writ application following direct appeal and no further direct appellate review was available. The AEDPA limitations period began to run the next day, May 26, 2017, and continued without interruption for one-year until its

---

[36] *Pace v. DiGuglielmo*, 544 U.S. 408, 414 (2005) ("When a postconviction application is untimely under state law, 'that [is] the end of the matter' for purposes of § 2244(d)(2)"); *Williams v. Cain*, 217 F.3d 303, 306-307 n.4 (5th Cir. 2000) (quoting *Villegas v. Johnson*, 184 F.3d 467, 469 (5th Cir. 1999)); *Smith v. Ward*, 209 F.3d 383, 384-85 (5th Cir. 2000).

[37] *Causey v. Cain*, 450 F.3d 601, 604-05 (5th Cir. 2006).

[38] *Carey v. Saffold*, 536 U.S. 214, 219-20 (2002); *Williams*, 217 F.3d at 310 (a matter is "pending" for § 2244(d)(2) purposes until "'further appellate review [is] unavailable under [Louisiana's] procedures.'")

[39] *Dillworth v. Johnson*, 215 F.3d 497, 501 (5th Cir. 2000) (state habeas petition challenging a prior conviction in one county was other collateral review even though filed as a challenge to a second conviction in a different county); *Nara v. Frank*, No. 99-3364, 2001 WL 995164, at *5 (3d Cir. Aug. 30, 2001) (motion to withdraw a guilty plea is "other collateral review").

[40] *Godfrey v. Dretke*, 396 F.3d 681, 686-88 (5th Cir. 2005).

expiration on May 25, 2018. During that period, Walker had no properly filed state post-conviction or other collateral review pending in any state court.

Walker's first post-conviction pleading was his application for post-conviction review which he signed and submitted to the state trial court on May 29, 2018, which was four days *after* the AEDPA filing period expired.[41] A state court pleading filed after expiration of the AEDPA filing period does not provide a petitioner any tolling.[42]

Walker's federal petition is deemed filed on September 28, 2020, under the applicable mailbox rule. This was more than two years and four months (857 days) after the AEDPA one-year filing period expired on May 25, 2018. Accordingly, Walker's federal petition was *not* timely filed and must be dismissed with prejudice for that reason.

**2. <u>No Equitable Tolling Warranted</u>**

The United States Supreme Court has held that AEDPA's one-year statute of limitations period in § 2244(d)(1) may be equitably tolled only when the petitioner has pursued his rights

---

[41] St. R. Vol. 7 of 7, Application for Post-Conviction Relief, at 5, 6/4/18 (dated 5/29/18).

[42] *See Scott v. Johnson*, 227 F.3d 260, 263 (5th Cir. 2000); *Vroman v. Brigano*, 346 F.3d 598, 602 (6th Cir. 2003) ("Once the limitations period is expired, collateral petitions can no longer serve to avoid a statute of limitations.") *see also Lookingbill v. Cockrell*, 293 F.3d 256, 264 (5th Cir. 2002) (missing the AEDPA deadline by even one day renders a federal petition untimely.) Walker had two years after finality of his conviction and sentence to file for state post-conviction relief. LA. CODE CRIM. PROC. art. 930.8(A). Although Louisiana's limitations period is longer than the one-year AEDPA limitations period, the disparity does not run afoul of the Constitution or excuse an untimely federal filing. *See Felker v. Turpin*, 518 U.S. 651, 664 (1996) (the AEDPA and its limitations period are constitutional); *Determann v. Lampert*, 150 F. App'x 623, 625 (9th Cir. 2005) (no equitable tolling based on claim that AEDPA's one-year limitations period was shorter than Oregon's two-year limitations period) (citing *Ferguson v. Palmateer*, 321 F.3d 820, 823 (9th Cir. 2003) (tension between AEDPA's one-year limitations period and a longer state limitations period did not render federal habeas inadequate or ineffective remedy)); *Webster v. Moore*, 199 F.3d 1256, 1259 (11th Cir. 2000) (two-year limitations period in Florida did not abrogate petitioner's responsibility to comply with shorter federally-mandated time provisions); *Ellis v. Martin*, 202 F.3d 281, 1999 WL 1101241 at *3 (10th Cir. Dec. 6, 1999) (unpub.) (AEDPA limitations period is constitutional and does not violate the Suspension Clause simply because it is shorter that a state's limitations period).

diligently and rare or extraordinary circumstances exist that prevented timely filing.[43] Equitable tolling is warranted only in situations during which a petitioner was actively misled or prevented in some extraordinary way from asserting his rights.[44]

Walker has asserted no reason that might constitute rare or exceptional circumstances why the one-year statute of limitations period should be considered equitably tolled in his case, and I can find none. The record does not establish any circumstances that might fit the restrictive boundaries of "exceptional circumstances" described in binding precedent to warrant equitable tolling in this case.[45] Walker, therefore, is not entitled to equitable tolling of the one-year AEDPA filing period.

Walker has asserted no other excuse to avoid the expiration of the AEDPA limitations period.[46] His federal petition, deemed filed September 28, 2020, was not timely filed and must be dismissed with prejudice for that reason.

---

[43] *Pace*, 544 U.S. at 418; *Fisher v. Johnson*, 174 F.3d 710, 713 (5th Cir. 1999); *Cantu-Tzin v. Johnson*, 162 F.3d 295, 299 (5th Cir. 1998); *Davis v. Johnson*, 158 F.3d 806, 810 (5th Cir. 1998).

[44] *Pace*, 544 U.S. at 418-19; *Cousin v. Lensing*, 310 F.3d 843, 848 (5th Cir. 2002).

[45] *See Holland v. Florida*, 560 U.S. 631, 651-54 (2010) (equitable tolling warranted where attorney was grossly negligent and failed to meet professional standards of care when he ignored client's requests to timely file a federal petition and failed for years to respond to client's letters or communicate with client); *Hardy v. Quarterman*, 577 F.3d 596, 599-600 (5th Cir. 2009) (equitable tolling warranted for significant state-created delay when, for almost one year, state appeals court failed in its duty under Texas law to inform petitioner that his state habeas petition had been denied despite his persistent requests, and petitioner diligently pursued federal habeas relief); *United States v. Wynn*, 292 F.3d 226 (5th Cir. 2002) (tolling warranted when defendant was deceived by attorney into believing that timely motion to vacate was filed); *Coleman*, 184 F.3d at 402 ("A garden variety claim of excusable neglect does not support equitable tolling."); *Fisher*, 174 F.3d at 715 (tolling *not* justified during petitioner's 17-days in psychiatric ward where he was confined, medicated, separated from his glasses and rendered legally blind, and denied meaningful access to the courts); *Cantu-Tzin*, 162 F.3d at 300 (State's alleged failure to appoint competent habeas counsel did *not* justify tolling); *Davis*, 158 F.3d at 808 n.2 (assuming without deciding that equitable tolling was warranted when federal district court thrice extended deadline to file habeas corpus petition beyond expiration of the AEDPA grace period).

[46] Walker has not urged his actual innocence or presented new, reliable evidence to meet the high burden set forth in *McQuiggin v. Perkins*, 569 U.S. 383 (2013) to forgive or restart the AEDPA statute of

**RECOMMENDATION**

For the foregoing reasons, it is **RECOMMENDED** that Walker's habeas corpus petition under 28 U.S.C. § 2254 be **DISMISSED WITH PREJUDICE** as time-barred.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation within fourteen (14) days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.[47]

New Orleans, Louisiana, this 21st day of May, 2021.

DONNA PHILLIPS CURRAULT
UNITED STATES MAGISTRATE JUDGE

---

limitations. He also has not sought relief from any state imposed procedural bar for the court to consider or apply the holding in *Martinez v. Ryan*, 566 U.S. 1 (2012). *See Trevino v. Thaler*, 569 U.S. 413, 429 (2013) (a *procedural bar* imposed by *state courts* "'will not bar a federal habeas court from hearing a substantial claim of ineffective assistance at trial if, in the [state's] initial-review collateral proceeding, there was no counsel or counsel in that proceeding was ineffective.'") (quoting *Martinez*, 566 U.S. at 13). Furthermore, the *Martinez* and *Trevino* decisions do *not* address or excuse the untimely filing of a federal habeas petition. *See Arthur v. Thomas*, 739 F.3d 611, 631 (11th Cir. 2014) ("Thus, we also hold that the reasoning of the *Martinez* rule does not apply to AEDPA's limitations period in § 2254 cases or any potential tolling of that period."); *Smith v. Rogers*, No. 14-0482, 2014 WL 2972884, at *1 (W.D. La. Jul. 2, 2014); *Falls v. Cain*, No. 13-5091, 2014 WL 2702380, at *3 (E.D. La. Jun. 13, 2014) (Order adopting Report and Recommendation). *Martinez* and *Trevino* also are *not* new rules of constitutional law made retroactive on collateral review to start a new one-year statute of limitations period under the AEDPA. *See In re Paredes*, 587 F. App'x 805, 813 (5th Cir. Oct. 25, 2014) ("the Supreme Court has not made either *Martinez* or *Trevino* retroactive to cases on collateral review, within the meaning of 28 U.S.C. § 2244."); *Adams v. Thaler*, 679 F.3d 312, 322 n.6 (5th Cir. 2012). Neither *Martinez* nor *Trevino* provide Walker any relief from his untimely federal filing.

[47] *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1430 (5th Cir. 1996) (*en banc*) (citing 28 U.S.C. § 636(b)(1)). *Douglass* referred to the previously applicable ten-day period for filing of objections, which was extended to fourteen days by amendment effective December 1, 2009, 28 U.S.C. § 636(b)(1).